IN THE DISTRICT COURT OF THE UNITED
STATES FOR THE SOUTHERN DISTRICT OF
OHIO EASTERN DIVISION

SEAN SWAIN,
Prison Reg. A243-205
Ohio State Penitentiary
878 Coitsville Hubbard Road
Youngstown, Ohio 44505

Plaintiff,

vs.

DELMER NORRIS,
Security Threat Group Coordinator,
Ohio Dept. of Rehabilitation
and Correction
4545 Fisher Road, Ste. D Columbus,
Ohio 43228

and

ANNETTE CHAMBERS-SMITH,
Director
Ohio Dept. of Rehabilitation and
Correction
4545 Fisher Road, Ste. D Columbus,
Ohio 43228

Defendants.

CASE NO. ______________

COMPLAINT
(With Jury Demand)

---

VERIFIED COMPLAINT WITH JURY DEMAND

---

## JURISDICTION.

1. This Court has jurisdiction over matters raised herein pursuant to Article III of the Constitution of the United States; 42 U.S.C. Section 1983; and 28 U.S.C. Sections 1331 and 1343(a)(3). Plaintiff's state law claims are raised pursuant to 28 U.S.C. Section 1367.
2. Plaintiff seeks declaratory relief under 28 U.S.C. Sections 2201 and 2202.
3. Plaintiff seeks injunctive relief pursuant to 28 U.S.C. Sections 2283 and 2284, and Rule 65 of the Federal Rules of Civil Procedure ("Civ. R.").

## VENUE

4. This Court is the proper venue pursuant to 28 U.S.C. Section 1391(b)(2).

## PARTIES INVOLVED

### *PLAINTIFF*

5. Plaintiff Sean Swain ("Sean") is a prisoner in custody of the Ohio Department of Rehabilitation and Correction ("ODRC") held as prisoner A243-205 at the Ohio State Penitentiary ("OSP") in Youngstown, Ohio. Plaintiff is included in Defendants' Security Threat Group database profiled as an "ANARCHIST," all in capital letters, absent valid cause, or rule-mandated preconditions.

### *DEFENDANTS*

6. Defendant Annette Chambers-Smith is the Director of the ODRC and executive head of that agency pursuant to Ohio Revised Code ("O.R.C. ") Section 5120.01. Defendant's responsibilities and authority include approval of agency rules, regulations, and policies, including Ohio Administrative Code ("OAC") Section 5120-9-37, "Inmate Group Activities," and policies and procedures for including prisoners on the ODRC's "STG List."
7. Defendant Delmer Norris is the ODRC's Security Threat Group Coordinator, the designer of Director Annette Chambers Smith. Defendants' responsibilities include maintaining the ODRC's "STG List."

## EXHAUSTION OF ADMINISTRATIVE REMEDIES.

8. Pursuant to OAC Section 5120-9-31(B), matters relating to the Ohio Administrative Code "are not grievable" and are, instead, "exclusively within the jurisdiction of the courts." Matters raised herein are not subject to the ODRC grievance process.
9. In an abundance of caution, Plaintiff attempted to raise his claims via the grievance process, and those claims were closed out by the institutional inspector, so the grievance process was foreclosed and unavailable.

## STATEMENT OF FACTS

10. Before imprisonment, Plaintiff received an Honorable Discharge from the United States Army. He worked as a journalist and received a writing scholarship while attending Bowling Green State University. Life had been good.
11. Plaintiff was found guilty of Aggravated Murder in Lucas County and has been imprisoned since 1991. Plaintiff had killed an intruder in his home before Ohio adopted the Castle Doctrine.
12. Plaintiff joined several civic organizations from prison, including Citizens United for the Rehabilitation of Errants (CURE-Ohio), serving three years on their Prisoner Advisory Board.

He was the cofounder of Catholic Justice Fellowship and successfully lobbied the Ohio Catholic Bishops to support parole reform legislation.

13. Plaintiff worked thousands of hours for community service painting classroom aids for the Mansfield Public Schools and organized prisoner music recordings for the Victims of Crime Program.
14. Plaintiff has taken every rehabilitative program made available to him through the institution. He has programmed extremely well for his criminal offense behavior.
15. Further, Plaintiff has graduated with honors from Ashland University, completed and then tutored two vocational programs, and earned his paralegal certification.
16. In 2002, Sean was personally nominated by Rosa Parks to be placed on the Wall of Tolerance for his peace work in prison. He has written three books in publication and contributed more than a decade of weekly commentaries to a globally syndicated radio show.
17. In thirty-five years of continuous captivity, Sean has never been accused of a single act of violence. He has never been involved in drugs, alcohol, or gangs.
18. Sean is held at OSP, Ohio's supermax prison, designed to neutralize the most dangerous one percent of the Ohio prison population.

<u>"Unauthorized Group Activities"</u>

19. OAC Section 5120-9-37, approved by Annette Chambers Smith, sets forth the administrative rules for group activities in prison. [1]
20. The rule, as written, is exclusionary. That is, *all* "associations" of "two or more persons" who have a "common interest" are unauthorized unless they have "been approved" by the ODRC. As all associations with two or more persons with a common interest are unauthorized unless expressly receiving approval to associate, every Ohio prisoner associating with anyone violates this rule.
21. Having expansively defined "unauthorized groups" as encompassing every association every prisoner engages in, the rule then sets forth what prisoners may not *do*:

    (B) An inmate shall not knowingly or intentionally engage in, whether *individually* or in concert with others:

    (1) Forming, organizing, promoting, encouraging, recruiting for, or *participating in, etc.,*

---

[1] 5120-9-37. Inmate Group Activities.

(A) No inmate shall be permitted to become an active member in any group within an institution until that group has been approved pursuant to this rule. An "unauthorized group" is defined as:

(1) An association of two or more persons with common characteristics (e.g., sharing a common interest, activity, or purpose; acting in concert on an ongoing or recurring basis; having a highly organized or loosely structured internal organization; recognizing themselves as a distinct group) which serves to distinguish that association with other inmates or groups, and

(2) Has not been approved by the department pursuant to this rule or any department directive. Ohio Admin. Code Section 5120-9-37(A) this definition, an unauthorized group is an "association of two or more persons with common characteristics...," whose association "has not been approved" by the ODRC. Importantly, this definition does not distinguish between "common characteristics" that are objectionable or considered a threat to security and those "common characteristics" that are harmless and innocuous. Such a definition applies equally to a horde of neo-Nazis sharpening shanks and Cleveland Browns fans cheering for their team scoring a touchdown. Both groups are composed of members sharing "common characteristics," a "common interest," or "activity," or "purpose." One group's common interest is the slaughter of their gang's STG; the other group's common interest is winning a football game. By rule, both groups are equally violative.

an unauthorized group.
(2) Possessing, creating, reproducing, using, or circulating, *etc*., any material related to an unauthorized group.
(3) Communicating support of, association with, or involvement in any unauthorized group. The form of communication may be verbal (written or spoken), as through codes, jargon, etc., or nonverbal (conduct, such as hand signs, symbols, displays, drawings, graffiti, distinctive clothing, hairstyles, colors, ornaments, etc.).
(4) Participating in criminal activities, or disruptive activities, such as disturbances, riots, fostering racial hatred, or union activities; and
(5) Violating institutional rules or directives or state and federal laws.
OAC Section 5120-9-37(B),

22. A prisoner engaging in any of the conduct described in OAC Section 5120-9-37(B)(1) through (B)(5) is engaged in "unauthorized group" activities, even if that prisoner is engaging in the conduct "individually," as outlined in paragraph (B). So, while the previous section defined unauthorized group activities as an "association of two or more persons," this paragraph also includes actions taken "individually." This unauthorized group activity includes "communicating support" for "any association of two or more persons" that does not have "approval" of the ODRC. This includes numerous innocuous couplings that free individuals engage in without thought.
23. By the expansive definition of what constitutes an "unauthorized group," and by the narrow definition of "authorized group" consisting of only those associations that have sought and received approval, and by the definition of what constitutes the conduct that a prisoner may "individually" engage in that would constitute "unauthorized group activities," literally any communication by any prisoner to anyone could constitute "unauthorized group activities."
24. The conduct itself listed in the rule to describe unauthorized group activities includes the abbreviation, "etc.," repeatedly (OAC Section 5120-9-37(B)(1), -(B)(2), and -(B)(3) twice).
25. Director Annette Chambers Smith has approved OAC Section 5120-9-37 with its unconstitutionally vague definition of unauthorized group activities. Defendant Chambers Smith has designated Delmer Norris as the Security Threat Group Coordinator, whose duties include enforcing OAC Section 5120-9-37, determining which groups constitute Security Threat Groups ("STGs"), and determining which prisoners are to be included in the ODRC's "Security Threat Group". Defendant Delmer Norris maintains the list of authorized and unauthorized groups pursuant to OAC Section 5120-9-37. Those lists are *not* available to the prison population. A prisoner is not provided with any notice of which groups are authorized and which are not. A prisoner is informed only that he has associated with an unauthorized group when he is subjected to disciplinary action for doing so.
26. Further, the list of Security Threat Groups is unavailable. It should be noted that while at least ostensibly every Security Threat Group is unauthorized, not every unauthorized group is necessarily a Security Threat Group. Nowhere in the ODRC does it define what a Security Threat Group is or explain how it is distinguished from mundane "unauthorized groups." Nowhere in the document is a list of Security Threat Groups provided. Prisoners have no way to know what constitutes an STG, what groups are STGs, what constitutes membership in an STG,

or the process for debriefing and thereby ending STG membership.

27. There exists no deliberative process, no discernible criteria for a prisoner to be provided with an STG profile and to be placed on the ODRC's STG List. A prisoner does not require a disciplinary finding for violating the unauthorized group activities policy to be placed on the STG List. In fact, a prisoner like Sean may be placed on the STG List and given an STG profile *and not even know it*. Routinely, prisoners are given an STG profile and added to the STG List without anyone at the ODRC *so much as informing the prisoner that such administrative action has been taken.*
28. Prisoners are not provided with an on-the-record hearing. There is no appeal of the determination of belonging to an STG.
29. Even if a hearing were provided, it would not matter; prisoners have no list of authorized or unauthorized groups, no criteria for what distinguishes STGs from unauthorized groups, and no way to argue intelligently that they are not a member of an STG when STG membership is not defined.
30. Absent definitions of Security Threat Groups, criteria, notice, or hearing, Sean was placed on the ODRC's STG List beginning in or about 2010 as an "ANARCHIST." Sean's placement on the STG List occurred without an accusation of misconduct or a finding that Sean engaged in unauthorized group activities. The reason for Sean's placement was that, in response to a question, he affirmed that he would prefer a world where human society was horizontally rather than vertically structured.

*History of STG*

31. In the 1990s, the ODRC employed an STG investigator at each state prison. Those investigators typically held another primary administrative position, with STG duties as a secondary responsibility. STG investigators would monitor the commonly understood prison gangs-- Bloods, Crips, Aryan Brotherhood, Gangster Disciples.
32. Under Attorney General Janet Reino, all of this radically changed. The Department of Justice ("DOJ"), through a system of "block grants," created a buy-in system for state departments of corrections. States participating in a national information-sharing system, which later became an online database maintained by the DOJ, would receive block grants. The amount of funding received on a state-by-state basis depended on the number of STGs and STG members reported.
33. STGs became a cash cow for the ODRC. With an economic incentive for doing so, the ODRC exponentially expanded its STG list. Each prison gang-- Bloods, Crips, Aryan Brothers-- was segmented and divided into multitudes of new groups, each group earning the ODRC another DOJ grant paycheck.
34. STG profiling became big business. Decades later, the ODRC employs a multitude of investigators at every Ohio prison whose primary duties are to surveil and investigate STGs. The STG list has proliferated to such an extent that DOJ block grant funds not only pay for all STG investigators but are also carried over into the operating budgets. While the bloc grant incentive program was likely designed to monitor valid threats to social order, the result is an ever-expanding inflation of STGs, as everyone in the ODRC employed within the STG monitoring framework is fully aware that a decrease in STGs and STG membership would result in a decrease in federal funding, and a decrease in federal funding would invariably result in downsizing the STG investigator cohort.

*Religious Beliefs*

35. Sean's position relating to the structuring of human society is not merely a social or political one. Sean identifies as a Future Primitivist, and his faith has been recognized by the ODRC, which has affirmed his religious preference. As the documents on file with the ODRC reveal, Sean's religion, Future Primitivism, as a principal tenet, rejects the hierarchical structuring of human society. By this system of belief, every person is answerable directly to their Creator and, therefore, the voluntary appointment of any other authority is the equivalent of placing a human being in the place of God. It is analogous to idol worship.
36. Future Primitivists share a set of strict beliefs in how to live in harmony with the expectations of their Creator, which coincides with living peacefully within a community where obedience to their Creator makes human authority unnecessary.

Legal Claims

Against Defendant Annette Chambers-Smith

37. Plaintiff realleges and incorporates by reference π6 through π41. Claims are brought against named Defendants in their personal and official capacities. Claims relating to OAC Section 5120-9-37 are brought against Defendant Annette Chambers-Smith. Plaintiff's state law claims are brought under this Court's supplemental jurisdiction, pursuant to 28 U.S.C. Section 1367.

Claims Against Defendant Annette Chambers Smith

38. The following ten (10) claims of constitutional violations and the underlying conduct that constitutes those claims also constitute state law claims. Each of the following ten (10) claims corresponds to state law claims of Dereliction of Duty, in violation of Section 2921.44(E) of the Ohio Revised Code, and Interfering with Civil Rights, in violation of Section 2921.45(A) of the Ohio Revised Code, for which Plaintiff may seek civil recovery under state law. O.R.C. Section 2307.61. 44. O.A.C. Section 5120-9-37(A)(1) violates the due process requirement of notice, as the definition of "unauthorized group" is so unconstitutionally vague as to regulate association and expression otherwise constitutionally protected. This also constitutes state law claims described in π43.
39. O.A.C. Section 5120-9-37(A)(1) violates the Freedom of Religion under the First Amendment as the definition of "unauthorized group" is so unconstitutionally vague as to regulate otherwise protected religious conduct. This also constitutes state law claims described in π43.
40. O.A.C. Section 5120-9-37(B) violates the due process requirement of notice, as the phrase, "in concert with others," is unconstitutionally vague, not specifying prisoner-to-prisoner speech for which a penological interest exists, permissively allowing for regulation of prisoner speech beyond prison walls for which no penological interest exists in regulating. This also constitutes state law claims described in π43.
41. O.A.C. Section 5120-9-37(B)(1) violates the due process requirement of notice, as prohibited conduct includes the phrase, "etc.," allowing regulation of undefined conduct not expressly listed. This also constitutes state law claims described in π43.
42. O.A.C. Section 5120-9-37(B)(2) violates the due process requirement of notice, as prohibited conduct includes the phrase, "etc.," allowing regulation of undefined conduct not expressly listed. This also constitutes state law claims described in π43.49. O.A.C. Section 5120-9-37(B)(3) violates the due process requirement of notice, as the prohibited conduct includes the phrase, "etc.," twice, allowing for regulation of undefined conduct not expressly listed. This also constitutes state law claims described in π43.
43. O.A.C. Section 5120-9-37 violates due process in the absence of a definition of "Security Threat Group" and/or the distinction between "unauthorized group" and "Security Threat Group." This also constitutes state law claims described in π43.
44. O.A.C. Section 5120-9-37 violates due process in the omission of criteria for what constitutes membership or participation in a "Security Threat Group," and whether such membership or

participation diverges from "unauthorized group" activities. This also constitutes state law claims described in π43.

45. O.A.C. Section 5120-9-37 violates due process in the omission of an administrative hearing or appeal relating to "Security Threat Group" determinations. This also constitutes state law claims described in π43.
46. O.A.C. Section 5120-9-37 violates due process in the absence of a process and defined criteria for prisoners on the "Security Threat Group" list to debrief and be removed from the list. This also constitutes state law claims described in π43.
47. Claims presented in ππ44 to ππ53 constitute ten (10) constitutional violations, ten (10) counts of Dereliction of Duty under state law, and ten (10) counts of Interfering with Civil Rights under state law, attributable to Defendant Annette Chambers Smith.
48. The following eight (8) claims of constitutional violations, and the underlying conduct that constitutes those claims, also constitute state law claims. Each of the following eight (8) claims corresponds to state law claims of Interfering with Civil Rights, in violation of O.R.C. Section 2921.45(A), for which Plaintiff may seek civil recovery under state law. O.R.C. Section 2307.61.

<u>Against Delmer Norris</u>

49. Defendant Delmer Norris violated Plaintiff's right to due process by placing Plaintiff on the "Security Threat Group" list when no definition of "Security Threat Group" is available to Plaintiff. This also constitutes the state law claim described in π55.
50. Defendant Delmer Norris violated Plaintiff's right to due process by placing Plaintiff on the "Security Threat Group" list when no criteria for what constitutes "Security Threat Group" participation or membership are available to Plaintiff. This also constitutes the state law claim described in π55.
51. Defendant Delmer Norris violated Plaintiff's right to due process by placing Plaintiff on the "Security Threat Group" list, absent an administrative hearing or appeal. This also constitutes the state law claim described in π55.
52. Defendant Delmer Norris violated Plaintiff's right to due process by placing Plaintiff on the "Security Threat Group" list absent a criterion or process for Plaintiff to earn removal. This also constitutes the state law claim described in π55.
53. Defendant Delmer Norris violated Plaintiff's First Amendment right to be free from political belief retaliation by placing Plaintiff on the "Security Threat Group" list explicitly for his beliefs and absent even an accusation of conduct that could be construed as "Security Threat Group" activity. This also constitutes the state law claim described in π55.
54. Defendant Delmer Norris violated Plaintiff's right to Equal Protection by invidiously placing Plaintiff on the "Security Threat Group" list for Plaintiff's political beliefs that diverge from Delmer Norris' beliefs, when those holding opposing views to Plaintiff are not placed on the "Security Threat Group" list. This also constitutes the state law claim described in π55.
55. Defendant Delmer Norris violated Plaintiff's right to be free from religious retaliation under the First Amendment by placing Plaintiff on the "Security Threat Group" list explicitly for beliefs that are tenets of his religious faith and absent any accusation of conduct. This also constitutes the state law claim described in π55.
56. Defendant Delmer Norris violated Plaintiff's right to Equal Protection by invidiously placing Plaintiff on the "Security Threat Group" list explicitly for Plaintiff's deeply held religious beliefs, as a class of one treated differently than all other prisoners similarly situated. This also constitutes the state law claim described in π55.
57. Claims presented in ππ56 to ππ63 constitute eight (8) constitutional violations and eight(8) counts of Interfering with Civil Rights, state law claims attributable to Defendant Delmer Norris.

PRAYER FOR RELIEF.

WHEREFORE, based on the foregoing facts constituting the foregoing claims, Plaintiff respectfully prays that this Court enter judgment granting the following relief:

1. A DECLARATION that the acts and omissions of named Defendants violated the rights of Plaintiff under the Constitution and laws of the United States and the State of Ohio as described herein.
2. An INJUNCTION requiring Defendant Annette Chambers Smith to remedy the constitutional deficiencies in Ohio Administrative Code Section 5120-9-37.
3. An INJUNCTION compelling Defendant Delmer Norris to remove Plaintiff from the "Security Threat Group" list.
4. NOMINAL DAMAGES as allowed by law.
5. EXEMPLARY DAMAGES as allowed by Ohio Revised Code Section 2307.61 for each criminal act for $5,000 for each criminal violation, for an aggregate of $100,000 against Defendant Annette Chambers Smith and an aggregate of $40,000 against Defendant Delmer Norris.
6. COMPENSATORY DAMAGES, as allowed by law, to be determined by a jury.
7. A TRIAL BY JURY on all matters so triable; and all relief this Court finds just, proper, and equitable.

Respectfully Submitted,

s/ Eric Allen

______________________

Eric J. Allen
Counsel for Sean Swain
4200 Regent St., Ste. 200
Columbus, Ohio 43219
(614) 309-0924