**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

SEAN SWAIN,

Prison Reg. A243-205

Ohio State Penitentiary

878 Coitsville Hubbard Road

Youngstown, Ohio 44505

Plaintiff,

vs.

DELMER NORRIS,

Security Threat Group Coordinator,

Ohio Dept. of Rehabilitation and Correction

4545 Fisher Road, Ste. D, Columbus, Ohio 43228

and

ANNETTE CHAMBERS-SMITH,

Director, Ohio Dept. of Rehabilitation and Correction

4545 Fisher Road, Ste. D, Columbus, Ohio 43228

Defendants.

Civil Action No. 2:26-cv-00542
Judge Algenon L. Marbley
Magistrate Judge Chelsey M. Vascura

# AMENDED VERIFIED COMPLAINT
**(With Jury Demand)**

## JURISDICTION

1. This Court has jurisdiction over matters raised herein pursuant to Article III of the Constitution of the United States; 42 U.S.C. § 1983; 28 U.S.C. §§ 1331 and 1343(a)(3); and 42 U.S.C. § 2000cc-2(a) (the Religious Land Use and Institutionalized Persons Act, "RLUIPA"). Plaintiff's state law claims are raised pursuant to 28 U.S.C. § 1367.

2. Plaintiff seeks declaratory relief under 28 U.S.C. §§ 2201 and 2202.

3. Plaintiff seeks injunctive relief pursuant to 28 U.S.C. §§ 2283 and 2284, and Rule 65 of the Federal Rules of Civil Procedure.

## VENUE

4. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES INVOLVED

### PLAINTIFF

5. Plaintiff Sean Swain ("Sean") is a prisoner in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC"), held as prisoner A243-205 at the Ohio State Penitentiary ("OSP") in Youngstown, Ohio. Plaintiff is included in Defendants' Security Threat Group database, profiled as an "ANARCHIST," absent valid cause or rule-mandated preconditions.

### DEFENDANTS

6. Defendant Annette Chambers-Smith is the Director of ODRC and executive head of that agency pursuant to Ohio Revised Code ("O.R.C.") § 5120.01. Her responsibilities include approval of agency rules, regulations, and policies, including Ohio Administrative Code ("OAC") § 5120-9-37, "Inmate Group Activities," and ODRC's policies for including prisoners on its "STG List."

7. Defendant Delmer Norris is ODRC's Security Threat Group Coordinator, designated by Director Chambers-Smith. His responsibilities include maintaining ODRC's STG List and determining which prisoners are included on it.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Pursuant to OAC § 5120-9-31(B), matters relating to the Ohio Administrative Code "are not grievable" and are instead "exclusively within the jurisdiction of the courts." The matters raised herein are not subject to the ODRC grievance process.

9. In an abundance of caution, Plaintiff attempted to raise his claims through the grievance process. Those grievances were closed by the institutional inspector, rendering the grievance process foreclosed and unavailable.

## STATEMENT OF FACTS

10. Before imprisonment, Plaintiff received an Honorable Discharge from the United States Army. He worked as a journalist and received a writing scholarship while attending Bowling Green State University.

11. Plaintiff was found guilty of Aggravated Murder in Lucas County and has been imprisoned since 1991. Plaintiff killed an intruder in his home before Ohio adopted the Castle Doctrine.

12. Plaintiff joined several civic organizations from prison, including Citizens United for the Rehabilitation of Errants ("CURE-Ohio"), serving three years on its Prisoner Advisory Board. He co-founded the Catholic Justice Fellowship and successfully lobbied the Ohio Catholic Bishops to support parole reform legislation.

13. Plaintiff has performed thousands of hours of community service, including painting classroom aids for Mansfield Public Schools and organizing prisoner music recordings for the Victims of Crime Program.

14. Plaintiff has completed every rehabilitative program made available to him and has programmed extremely well for his offense behavior.

15. Plaintiff graduated with honors from Ashland University, completed and later tutored two vocational programs, and earned his paralegal certification.

16. In 2002, Plaintiff was personally nominated by Rosa Parks to be placed on the Wall of Tolerance for his peace work in prison. He has authored three published books and has contributed more than a decade of weekly commentary to a globally syndicated radio program.

17. In thirty-five years of continuous incarceration, Plaintiff has never been accused of a single act of violence and has never been involved with drugs, alcohol, or gangs.

18. Plaintiff is held at OSP, Ohio's supermax facility, designed to house the most dangerous one percent of Ohio's prison population.

**"Unauthorized Group Activities"**

19. OAC § 5120-9-37, approved by Defendant Chambers-Smith, sets forth ODRC's rules governing group activity in Ohio prisons.

20. The rule defines an "unauthorized group" as any association of two or more persons sharing a common characteristic, interest, or purpose that has not been approved by ODRC. As written, virtually every association of two or more prisoners qualifies as "unauthorized" absent express prior approval.

21. The rule further prohibits, among other things: forming, promoting, or participating in an unauthorized group; possessing or circulating material related to an unauthorized group; communicating support for or association with an unauthorized group, whether verbally or nonverbally; participating in disruptive activities; and violating any institutional rule or directive.

22. Paragraph (B) of the rule extends liability to conduct undertaken "individually," such that a single prisoner communicating support for an unapproved association of others may violate the rule without engaging in any group conduct of his own.

23. Because of the rule's breadth, and its narrow definition of "authorized group" as limited to associations that have obtained ODRC's approval, virtually any communication by any prisoner to any other person is capable of constituting "unauthorized group activity."

24. The rule's descriptions of prohibited conduct repeatedly include the open-ended term "etc.," leaving prisoners unable to determine the outer bounds of prohibited conduct.

25. Defendant Chambers-Smith has approved OAC § 5120-9-37 and has designated Defendant Norris as ODRC's Security Threat Group Coordinator, responsible for enforcing the rule, determining which groups constitute "Security Threat Groups," and determining which prisoners are included on ODRC's STG list. The list of authorized and unauthorized groups is not disclosed to the prison population.

26. The rule and ODRC's practice nowhere define "Security Threat Group" or distinguish it from the broader category of "unauthorized group." No list of recognized STGs is published. Prisoners have no means of learning what constitutes an STG, which groups qualify, what constitutes membership, or the process by which a prisoner may debrief and be removed from the list.

27. There is no deliberative process and no disclosed criteria governing placement of a prisoner on the STG list. A disciplinary finding is not required. A prisoner may be placed on the list, and assigned an STG profile, without ever being informed that this administrative action has occurred.

28. Prisoners are afforded no on-the-record hearing and no avenue of appeal from an STG determination.

29. Even were a hearing provided, prisoners have no criteria against which to test their own conduct, no access to any list of authorized or unauthorized groups, and no defined understanding of what distinguishes STG membership from ordinary unauthorized-group activity.

30. In or about 2010, absent any definition, criteria, notice, or hearing, Plaintiff was placed on ODRC's STG list and profiled as an "ANARCHIST." Plaintiff's placement occurred without any accusation of misconduct or finding that he had engaged in unauthorized group activity. The stated basis for Plaintiff's designation was his affirmation, in response to a question, that he would prefer a world in which human society was structured horizontally rather than vertically.

**Disparate Treatment of the Opposing Viewpoint**

31. On information and belief, ODRC maintains no equivalent classification, list, or designation for prisoners who affirm the opposite viewpoint — that human society should be structured vertically or hierarchically, consistent with Defendant Norris' own apparent views. Plaintiff is aware of no prisoner subjected to STG classification, or any comparable designation, for expressing agreement with a hierarchical structuring of society. Prisoners who share Defendant Norris' view of social organization face no classification; only those who hold the contrary view, including Plaintiff, are so designated.

**History of STG**

32. In the 1990s, ODRC employed a single STG investigator at each state prison, typically as a secondary duty, primarily to monitor recognized prison gangs.

33. Under a Department of Justice ("DOJ") block-grant program, states received federal funding tied to the number of STGs and STG members reported to a national database.

34. With this financial incentive, ODRC's STG list expanded substantially over time, as existing gangs were subdivided into additional reportable groups.

35. ODRC now employs numerous STG investigators across its institutions, funded in part by continuing DOJ block-grant revenue. On information and belief, based on information provided to Plaintiff by a corrections employee with access to ODRC's STG records, ODRC's STG rolls include an estimated 30,000 to 40,000 Ohio prisoners, and the agency's continued receipt of federal funding depends in part on maintaining the size of those rolls.

**Religious Beliefs**

36. Plaintiff's belief regarding the structuring of human society is not merely social or political. Plaintiff identifies as a Future Primitivist, a faith ODRC has itself recognized and affirmed as Plaintiff's religious preference. A principal tenet of Future Primitivism rejects the hierarchical structuring of human society, holding that every person is answerable directly to their Creator, such that voluntary submission to human authority is the equivalent of idol worship.

37. Future Primitivists share a body of belief oriented toward living in harmony with their Creator's expectations, which coincides with peaceful community life in which obedience to human authority is unnecessary.

**Concealment of Designation and Denial of Public Records**

38. At no time has Defendant Norris informed Plaintiff whether he is on the STG list, what designation he carries, or the basis for that designation. Plaintiff's STG profiling and re-profiling has been conducted covertly, without Plaintiff's knowledge, consent, or notice.

39. In October 2012, Plaintiff submitted a Public Records request to the Custodian of Records at Mansfield Correctional Institution seeking records concerning his potential STG profiling. That request was denied.

40. Between 2012 and 2025, Plaintiff submitted additional Public Records requests seeking the same information. Each such request was denied or went unanswered. Plaintiff eventually discontinued these efforts, reasonably believing them to be futile.

41. In March 2025, a Public Records request submitted by a third party to ODRC yielded disclosures including internal email communications involving Defendant Norris and other ODRC administrators. These disclosures did not, at that time, reveal information Plaintiff recognized as determinative of his own STG status.

42. In March 2026, Plaintiff had his first determinative contact with a corrections employee with direct access to ODRC's STG records ("STG Source"). STG Source informed Plaintiff that ODRC's STG records identified Plaintiff as a non-U.S. citizen originating from Indonesia, that this information had been forwarded to the Department of Justice, U.S. Immigration and Customs Enforcement, and the Department of Homeland Security, and that Plaintiff faced imminent deportation as a result. Plaintiff was born in Iowa and has never been to Indonesia.

43. Because of STG Source's warning, Plaintiff was able to contact counsel and avert his deportation by a matter of weeks.

44. Internal emails between Defendant Norris and ODRC employee Brian Wittrup, obtained through Public Records disclosure, corroborate this effort to identify Plaintiff to federal immigration authorities as a foreign national subject to removal.

**Repeated Re-Designation**

45. According to STG Source, Plaintiff was first placed on the STG list in 2010 as an "ANARCHIST." In 2012, his designation was changed to identify him as a leader of the "Army of the 12 Monkeys," a group ODRC modeled on a motion picture. That designation was suspended in 2019, reinstated in 2022, and changed back to "ANARCHIST" in 2024.

**Security Classification Override**

46. According to STG Source, Defendant Norris' STG designation was relied upon, in part, to override Plaintiff's security classification in October 2022 from Level 1 (minimum security) to Level 4 (maximum security), resulting in Plaintiff's placement at OSP. Plaintiff has no disciplinary record reflecting any act of violence in thirty-five years of incarceration.

**Parole Consequences**

47. In 2016 and again in 2021, while carrying an STG designation of which he was unaware, Plaintiff appeared before the Ohio Parole Board for parole-suitability hearings. The Ohio Parole Board has access to STG records and considers STG designation in evaluating parole suitability. At both hearings, Plaintiff was asked whether he had any gang association and answered that he did not. Plaintiff was denied parole at both hearings. Plaintiff is scheduled to appear again in September 2026.

## LEGAL CLAIMS

**Claims Against Defendant Annette Chambers-Smith**

48. Plaintiff realleges and incorporates by reference paragraphs 1 through 47. Claims are brought against Defendant Chambers-Smith in her personal and official capacities. Each of the following ten constitutional claims also constitutes a state-law claim for Dereliction of Duty, O.R.C. § 2921.44(E), and Interfering with Civil Rights, O.R.C. § 2921.45(A), recoverable under O.R.C. § 2307.61.

49. Count I: OAC § 5120-9-37(A)(1) violates the due process requirement of notice, as the definition of "unauthorized group" is unconstitutionally vague and regulates otherwise-protected association and expression.

50. Count II: OAC § 5120-9-37(A)(1) violates the Free Exercise Clause of the First Amendment, as its vague definition regulates otherwise-protected religious conduct.

51. Count III: OAC § 5120-9-37(B)'s phrase "in concert with others" is unconstitutionally vague, failing to distinguish prisoner-to-prisoner speech implicating a legitimate penological interest from speech beyond prison walls implicating none.

52. Count IV: OAC § 5120-9-37(B)(1)'s use of the term "etc." is unconstitutionally vague.

53. Count V: OAC § 5120-9-37(B)(2)'s use of the term "etc." is unconstitutionally vague.

54. Count VI: OAC § 5120-9-37(B)(3)'s two uses of the term "etc." are unconstitutionally vague.

55. Count VII: OAC § 5120-9-37 violates due process in the absence of any definition of "Security Threat Group" or distinction between "unauthorized group" and "Security Threat Group."

56. Count VIII: OAC § 5120-9-37 violates due process in the omission of criteria for what constitutes membership or participation in a Security Threat Group.

57. Count IX: OAC § 5120-9-37 violates due process in the omission of any administrative hearing or appeal relating to Security Threat Group determinations.

58. Count X: OAC § 5120-9-37 violates due process in the absence of any defined process or criteria for prisoners to debrief and be removed from the STG list.

59. Count XI (RLUIPA): Defendant Chambers-Smith, in her official capacity, has approved and maintains OAC § 5120-9-37 and ODRC's related STG policies and practices in a manner that imposes a substantial burden on

Plaintiff's sincere religious exercise as a Future Primitivist, without demonstrating that the challenged policy or practice is the least restrictive means of furthering a compelling governmental interest, in violation of RLUIPA, 42 U.S.C. § 2000cc-1(a). Plaintiff seeks only declaratory and injunctive relief on this claim; RLUIPA does not authorize an award of money damages against state officials in either their official or individual capacities. Sossamon v. Texas, 563 U.S. 277 (2011); Haight v. Thompson, 763 F.3d 554, 568 (6th Cir. 2014).

**Claims Against Defendant Delmer Norris**

60. Plaintiff realleges and incorporates by reference paragraphs 1 through 47. Claims are brought against Defendant Norris in his personal and official capacities. Each of the following constitutional claims, except Count XVIII, also constitutes a state-law claim for Interfering with Civil Rights, O.R.C. § 2921.45(A), recoverable under O.R.C. § 2307.61.

61. Count XII: Defendant Norris violated Plaintiff's right to due process by placing Plaintiff on the STG list absent any definition of "Security Threat Group."

62. Count XIII: Defendant Norris violated Plaintiff's right to due process by placing Plaintiff on the STG list absent any criteria for what constitutes STG membership or participation.

63. Count XIV: Defendant Norris violated Plaintiff's right to due process by placing Plaintiff on the STG list absent any administrative hearing or appeal.

64. Count XV: Defendant Norris violated Plaintiff's right to due process by placing Plaintiff on the STG list absent any criterion or process for Plaintiff to earn removal.

65. Count XVI: Defendant Norris violated Plaintiff's First Amendment rights to freedom of belief and expression by designating Plaintiff based on a stated belief alone, absent conduct, association, or advocacy implicating any legitimate penological interest, in violation of the First Amendment as applied to prisoners under Turner v. Safley, 482 U.S. 78 (1987), and Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119 (1977).

66. Count XVII: Defendant Norris violated Plaintiff's rights under the Free Exercise Clause of the First Amendment by designating Plaintiff based on a belief that is also a principal tenet of Plaintiff's ODRC-recognized religious practice, in violation of the standard set forth in O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987).

67. Count XVIII (RLUIPA): Defendant Norris, in his official capacity as ODRC's Security Threat Group Coordinator, has designated and maintained Plaintiff on the STG list in a manner that imposes a substantial burden on Plaintiff's sincere religious exercise, without the designation being the least restrictive means of furthering a compelling governmental interest, in violation of 42 U.S.C. § 2000cc-1(a). Plaintiff seeks only declaratory and injunctive relief, including an order directing Plaintiff's removal from the STG list, on this claim.

68. Count XIX: Defendant Norris violated Plaintiff's right to Equal Protection by classifying Plaintiff adversely based on his expressed political and social viewpoint favoring horizontal social structuring, while affording no comparable classification to prisoners expressing the opposing, hierarchical viewpoint, in violation of the Equal Protection Clause under Police Dept. of Chicago v. Mosley, 408 U.S. 92 (1972).

69. Count XX: Defendant Norris violated Plaintiff's right to Equal Protection by classifying Plaintiff adversely based on a belief that is also a tenet of his religious practice, while ODRC affords no comparable classification to adherents of religious or philosophical traditions consistent with a hierarchical view of social organization.

70. Count XXI: Defendant Norris violated Plaintiff's right to due process by attaching to Plaintiff a stigmatizing "Security Threat Group"/"ANARCHIST" label, disseminated to federal authorities, without notice or hearing, and paired with concrete adverse legal consequences including a security-level override, adverse consideration at parole-suitability hearings, and an attempted deportation referral, in violation of due process under Wisconsin v. Constantineau, 400 U.S. 433 (1971), and Paul v. Davis, 424 U.S. 693 (1976).

71. Count XXII: Defendant Norris violated Plaintiff's right to substantive due process by causing or permitting false information identifying Plaintiff as a foreign national subject to removal to be transmitted to federal

immigration authorities without factual basis, in a manner that shocks the conscience, in violation of the Fourteenth Amendment.

**PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing facts constituting the foregoing claims, Plaintiff respectfully prays that this Court enter judgment granting the following relief:

1. A DECLARATION that the acts and omissions of named Defendants violated the rights of Plaintiff under the Constitution and laws of the United States and the State of Ohio as described herein.

2. An INJUNCTION requiring Defendant Chambers-Smith to remedy the constitutional and statutory deficiencies in OAC § 5120-9-37, including its noncompliance with RLUIPA.

3. An INJUNCTION compelling Defendant Norris to remove Plaintiff from the Security Threat Group list.

4. NOMINAL DAMAGES as allowed by law.

5. EXEMPLARY DAMAGES as allowed by O.R.C. § 2307.61 for each state-law violation described herein, in an amount to be calculated based on the final counts pled, against Defendant Chambers-Smith and Defendant Norris respectively. [The aggregate amount of Exemplary Damages totals $100,000 against Defendant Annette Chambers Smith and $50,000 against Defendant Delmer Norris. ]

6. COMPENSATORY DAMAGES, as allowed by law, to be determined by a jury, on all claims other than Counts XI and XVIII (RLUIPA), for which only declaratory and injunctive relief is sought.

7. A TRIAL BY JURY on all matters so triable; and all relief this Court finds just, proper, and equitable.

Respectfully Submitted,

/ s /
Eric J. Allen (073384)
Counsel for Sean Swain
The Law Office of Eric J. Allen, LTD.
4200 Regent Street, Suite 200
Columbus, Ohio 43219
(614) 443-4840
eric@eallenlaw.com
seanswaindefensecommittee@gmail.com

VERIFICATION.

I hereby swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

______________________

Sean Swain

Sworn and subscribed before me, a notary public, this 18 day of July, 2026.

NOTARY PUBLIC

My commission expires: 7-11-26.

NOTARIAL SEAL
STATE OF OHIO